# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| **King Grant-Davis,** ) | **Case No. 2:15-cv-4019-PMD-MGB** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Supreme Court of South Carolina, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| _____ ) | |

Plaintiff filed this civil action, proceeding *pro se* and *in forma pauperis* ("IFP"). This case is in proper form and ready for review. Pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. Pursuant to 28 U.S.C. '636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.), the Magistrate Judge is authorized to review the complaint and to submit findings and recommendations to the District Judge. Upon careful review of the record and applicable law, the Magistrate Judge recommends that the Complaint be **dismissed without prejudice**, and without issuance and service of process, for the following reasons:

I.  Relevant Law

　　A.  *Pro Se* IFP Non-Prisoner Complaint

At the time Plaintiff filed the instant Complaint on September 28, 2015, he was not incarcerated. If a plaintiff "does not meet the PLRA's definition of prisoner," the complaint is not subject to the PLRA's screening requirements for lawsuits filed by prisoners. *Michau v. Charleston Cty., S. C*., 434 F.3d 725, 727-28 (4th Cir. 2006), *cert. denied*, 548 U.S. 910 (2006) (citing 28 U.S.C.A. § 1915A(b)(1)). Although state criminal charges are currently pending

Page 1 of 16

against Plaintiff, any future incarceration would not affect the analysis here.[1] Similarly, although Plaintiff indicates he was previously incarcerated, any past incarceration also would not affect the analysis. "Ex-prisoners are not prisoners; after release, the PLRA does not apply to them." *Bardes v. Magera*, 2008 WL 2627134 (D.S.C. June 25, 2008).

Plaintiff is, however, proceeding IFP. Title 28 U.S.C.A. § 1915(e) governs IFP filings and provides that a district court must dismiss an action that the court finds to be frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.A. § 1915(e)(2)(B)(i-iii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). As for a failure to state a claim, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

### B. Liberal Construction

Courts liberally construe *pro se* filings, *Estelle v. Gamble*, 429 U.S. 97 (1976), and hold them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). "Liberal construction" means that if the court can reasonably read a pleading to state a valid claim, it should do so, but the court should not "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985),

---

[1] See http://jcmsweb.charlestoncounty.org/PublicIndex (site last visited November 24, 2015, see Case No. 2015A1010203703).

*cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that a court may ignore a clear failure in the pleading to allege facts setting forth a cognizable claim. *Weller v. Dep't. of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990).

II. Factual Allegations

Plaintiff has filed a lengthy Complaint with detailed allegations about the procedural history of his case. The alleged facts will be summarized as succinctly as possible. According to Plaintiff, he sought a permit from the City of Charleston's "Special Events Committee" on September 26, 2014 to hold an event during the 2015 Labor Day weekend. He indicates that "his group of volunteers" proposed a "combined 10K and 5K run/walk event to start and end and have ceremonies at Marion Square Park" near downtown Charleston's central business district. (DE# 1 at 3, ¶ III "Statement of Claim"). Plaintiff indicates that Charleston's "Special Events Ordinance" (Sec. 2-189(d-j)) authorizes such committee to review applications and provides relevant criteria for consideration, such as safety, police and fire protection, traffic control, parking, and interference with construction projects or other special events. Plaintiff alleges that Charleston also has a "Tourism Management Advisory Committee" which makes recommendations to the "Planning Commission" regarding the "Tourism Plan," on which in turn, the City Council votes. According to Plaintiff, the Tourism Management Advisory Committee recommended that no new walk/run events be approved in the downtown Charleston business district at this time.

Plaintiff acknowledges that the Special Events Committee advised him by letter that no new walk/run events were being approved, including his proposed event. Plaintiff complains that the Chairperson and other committee members could not impose a "moratorium" and were "prejudiced" against his application because they opposed any new walk/run events. He

complains that they should have recused themselves. He also inconsistently complains that they had to evaluate his application under all the criteria listed in the ordinance.

On December 19, 2014, Plaintiff sought judicial review of the denial of his permit application. The Court of Common Pleas, for the Ninth Judicial Circuit, in South Carolina, allowed him to proceed IFP. At a hearing, Plaintiff argued his case. (DE# 1 at 10, ¶ 20). Counsel for the City of Charleston pointed out that the Special Events Committee had personally met with Plaintiff, examined his application, heard his oral presentation, and voted unanimously to deny the permit. According to Plaintiff, the presiding state judge "listened, one-sidedly." (*Id at* ¶ 21). On April 27, 2015, the state court entered an Order upholding denial of the permit. (*Id*. at ¶ 24).

On May 13, 2015, Plaintiff appealed. (*Id*. at ¶ 27). Plaintiff demanded various exceptions to the South Carolina Appellate Court Rules. For example, he sought to proceed without paying the appellate filing fee, tried to obtain transcripts without paying for them, asked to file one "inclusive brief" instead of multiple briefs, and sought waiver of the requirement that fifteen (15) copies of briefs must be filed. (*Id*. at ¶¶ 28-29). Plaintiff indicates that counsel for the City of Charleston did not oppose his request to proceed IFP on appeal, but opposed "any alteration or adjustment to the Appellate Court Rules regarding the perfecting and prosecution of an appeal." (DE# 1 at 12, ¶ 30). On July 16, 2015, Chief Judge John C. Few of the South Carolina Court of Appeals denied Plaintiff's motion, although he did allow Plaintiff to file a single copy of the final brief. (*Id.* at ¶ 32). The Order advised Plaintiff that "the filing fee must be paid within fifteen days of this order." (*Id*.).

Plaintiff sought "rehearing," even though no final appellate decision on the merits had been issued. (*Id.* at ¶ 33). In his motion for "rehearing," Plaintiff added new arguments, demanded waiver of several appellate filing fees, sought waiver of costs for copying and

producing the appellate record (including over one hundred pages of Plaintiff's "exhibits"), and demanded what he described as "restoration" of his appeal. Counsel for the City of Charleston filed another response brief, pointing out that Plaintiff's demand for waiver of various fees and costs of printing the transcript and record on appeal were matters outside the scope of a motion to proceed IFP. (*Id.* at ¶ 34). Counsel also pointed out that no statute authorized Plaintiff to proceed IFP in this type of case, and that the case did not implicate any "fundamental rights" arising under the United States Constitution. (*Id.*). Plaintiff alleges that the Deputy Clerk for the South Carolina Court of Appeals sent him a letter (dated August 5, 2015), advising that "there is no reconsideration of in forma pauperis status" and that "the notice of appeal filing fee must be paid in accordance with the Court's Order of July 16, 2015 within fifteen days from the date of this letter or this appeal will be dismissed." (*Id.* at ¶ 35).

On August 14, 2015, Plaintiff sought review by the Supreme Court of South Carolina. He broadened his arguments, contending generally that the appellate courts of South Carolina had to "grant indigent litigants in forma pauperis relief in civil action cases wherein such relief was found by the court of original jurisdiction," and that some "statutes and rules" allegedly authorized IFP status in civil cases. (*Id*. at ¶¶ 36-39). He urged that "indigent civil litigants are entitled to effective relief for access to the court and to petition the government for redress of grievances." (*Id*. at ¶ 39). Counsel for the City of Charleston filed another response brief, pointing out that Plaintiff was not merely seeking a waiver of the filing fee, but rather, was seeking a much broader, unprecedented, and unwarranted waiver of fees and other costs of litigation. (*Id*. at ¶ 40).

On August 24, 2015, the Supreme Court of South Carolina denied review "without prejudice to petitioner's ability to seek review under Rule 242 of the South Carolina Appellate Court Rules if he is ultimately aggrieved by the final decision of the Court of Appeals regarding

his appeal." (*Id*. at ¶ 41).[2] Plaintiff alleges that his appeal was then dismissed pursuant to Rule 203 of the South Carolina Appellate Court Rules for "failure to pay the filing fee." (*Id*. at ¶ 42). Plaintiff did not appeal such dismissal in state court. Instead, he filed the present federal action on September 28, 2015, seeking declaratory relief against the South Carolina Court of Appeals, Supreme Court of South Carolina, and the State of South Carolina.

In his Complaint, Plaintiff includes a section captioned "Argument," where he disputes the correctness of the ruling of the Supreme Court of South Carolina. (*Id*. at ¶¶ 44-50). He complains that Chief Judge Toal "ignored" his argument on Page 9 of his Petition, where he cited *Lakes v. State*, 333 S.C. 382, 510 S.E.2d 228 (Ct.App. 1998), *r'hrg denied* (Jan. 30, 1999), *cert, denied* (July 9, 1999). Plaintiff contends that such habeas case allegedly provided authority for the Supreme Court of South Carolina "to accept the instant [non-habeas] case for review under SCACR Rule 240(j), Rule 242(b), or Rule 266." (*Id*. at ¶ 44).

As for the relief sought in this federal action, the pre-printed Complaint Form asks the Plaintiff to "state briefly and exactly what you want this court to do for you." (DE# 1 at ¶ IV "Relief"). Instead of responding directly to this question, Plaintiff restates his conclusory allegation that he was "entitled to effective meaningful access to the appellate high courts of South Carolina, and to the right to effectively petition the government for redress of grievance" and that "the State of South Carolina unconstitutionally violated these rights of the plaintiff when the South Carolina government and appellate courts refused to permit the plaintiff to proceed in forma pauperis (with full poor person relief) status, after such status was found by the original court." (*Id*.). Plaintiff asks that this federal court "declare" that the state courts (by denying his procedural motions) violated his constitutional rights. Although Plaintiff does not seek to recover

---

[2] Rule 242(b) of the South Carolina Appellate Court Rules provides in relevant part that a writ of certiorari to the South Carolina Supreme Court is "not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons."

any specific amount of monetary damages from the Defendants, he contends that the State of South Carolina should pay for more of the costs and expenses of litigation for indigent litigants.

III. Plaintiff's Claims

Plaintiff indicates that he is not challenging the denial of his permit application. (DE# 1 at 11, ¶ 25). Rather, he disputes several procedural rulings of the state appellate courts and contends that the State of South Carolina thereby violated his constitutional right "to petition the government for redress of grievance." (DE# 1 at ¶ IV). Plaintiff characterizes his present federal lawsuit as involving "the denial by the Defendants of the rights of poor persons to effective access to the courts to petition the government for redress of grievances, and to equal protection of the laws, by their actions and inaction in refusing to grant indigent litigants appropriate and necessary poor persons and in forma pauperis relief in South Carolina appellate high courts." (DE# 1 at 3, ¶ III, "Statement of Claim"). He broadly argues that "[t]his constitutional protections (sic) for indigents must apply in adverse matters before other branches of governments as well." (*Id*. at ¶ 47).

It is unclear whether the pro se Plaintiff is attempting to appeal: 1) the dismissal of his own state appeal, including the denial of various state procedural motions, or 2) whether he is attempting to bring a generalized challenge to the constitutionality of state appellate fee requirements on behalf of all indigent litigants. Both possibilities will be addressed herein.

IV.  Analysis

A civil action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999). To state a § 1983 claim, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of

Page 7 of 16

state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construing Plaintiff's Complaint as an attempt to bring a civil rights action under § 1983, and even assuming that any nonconlusory factual allegations in the Complaint are true, the Plaintiff's Complaint is subject to summary dismissal.

A. Lack of Jurisdiction Pursuant to Rooker–Feldman Doctrine

To the extent Plaintiff is attempting to "appeal" the state court decisions, the Rooker–Feldman doctrine precludes a federal district court from sitting as an appellate tribunal for review of state-court decisions.[3] The Fourth Circuit Court of Appeals has summarized the doctrine as follows:

> Under the Rooker–Feldman doctrine, a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 … (1994). We regard the doctrine as jurisdictional. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) ("Because the Rooker–Feldman doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis.")…

*Am. Reliable Insurc. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). The Court may *sua sponte* raise the issue of jurisdiction. *Jordahl v. Dem. Party of Va.*, 122 F.3d 192, 197 n. 5 (4th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998).

The Rooker–Feldman doctrine "operates principally to preserve the structure of appeals from state courts to the United States Supreme Court under 28 U.S.C. § 1257(a) and to bar any proceeding that would functionally amount to a lateral appeal to a United States district court." *Moore v. City of Asheville, N.C.*, 396 F.3d 385 (4th Cir. 2005), *cert. denied*, 546 U.S. 819 (2005). "Appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997), *cert.*

---

[3] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476–82 (1983) (federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

*denied*, 524 U.S. 945 (1998). "[L]ower federal courts do not have jurisdiction to review state-court decisions." (*Id.*). In *Am. Reliable Insurc. Co.*, the Fourth Circuit Court of Appeals explained that:

> Appellants were asking the federal courts to reach the "correct" result that they believe was denied in state court. Rooker–Feldman generally applies when a state-court litigant "sues in federal district court to readjudicate the same issues decided in the state court proceedings." *Brown & Root*, 211 F.3d at 201; see *id.* at 200 (applying Rooker–Feldman doctrine where the federal complaint sought "precisely the same relief denied by the state trial court" and the briefs filed presented "an argument which the state court had already rejected"); *Plyler*, 129 F.3d at 731 (explaining that Rooker–Feldman principles bar district court consideration of "issues actually presented to and decided by a state court").

*Id.*, 336 F.3d at 316.

Here, Plaintiff lost in state court on his procedural motions, and his case was dismissed. Plaintiff now asks this federal district court to review the state court decisions and "declare" that they violated his constitutional rights. Essentially, Plaintiff is asking this federal court to force the state courts to interpret state appellate rules as he desires. His Complaint is an impermissible attempt to "appeal" the state court decisions in federal court. The *Rooker Feldman* doctrine forbids this. *Am. Reliable Insurc. Co.*, 336 F.3d at 316. This federal court lacks jurisdiction to review state court decisions, and it would be particularly inappropriate to interfere with the state courts' interpretation of their own procedural rules, including the requirement of a filing fee for appeals in a non-habeas civil case that does not involve any fundamental rights. This federal court may not issue what would essentially be a writ of mandamus to a state court. *See Gurley v. Superior Court of Mecklenburg Cty.*, 411 F.2d 586, 587 (4th Cir. 1969) (holding that federal district courts lack appellate jurisdiction over state courts, and therefore lacked jurisdiction to issue writ of mandamus to compel state court to prepare free transcript); *Ransom v. Gray*, Case No. 6:09-1246-PMD-WMC, 2009 WL 3232695 (D.S.C. October 6, 2009) (same).

B. Permission to Proceed IFP Does Not Entitle Plaintiff to Cost-Free Litigation

To the extent Plaintiff is attempting to challenge the constitutionality of the applicable state appellate fee requirements on "behalf of all indigent litigants," Plaintiff's Complaint is premised on several misapprehensions of law.

First, he mistakenly interprets permission to proceed IFP (*i.e.* without paying the filing fee) as permission to litigate entirely without cost. His present Complaint is largely based on this erroneous premise. This Court has previously held that IFP status "applies only to the filing fee" and that an indigent litigant is not entitled "to copies, subpoenas, transportation, or deposition transcripts at government expense." *Tyson v. Jordan,* C/A No. 6:10–1528–MBS–KFM, 2010 WL 3257840, *2 (D.S.C. July 12, 2010), *adopted by* 2010 WL 3257861 (D.S.C., Aug. 16, 2010) (summarily dismissing case without issuance and service of process). In *Tyson*, this Court emphasized that:

> There is no federal constitutional right for any civil litigant, including one who might or might not qualify as an indigent for purposes of waiver of case filing fees, to avoid payment for court costs such as the fee currently charged in South Carolina civil courts for the filing of motions. Regardless of whether or not Plaintiff was granted in forma pauperis status in connection with the mandamus case he filed in Florence County Court of Common Pleas, it is well settled that a grant of such status does not mean that an "in forma pauperis plaintiff's discovery [or other court] costs either are underwritten or are waived." … indigent plaintiffs are responsible for other costs incurred during litigation and … there is no constitutional right to have such costs covered by the government.

*Id.* at *4; s*ee also Temple v. Oconee Cty.*, Case No. 6:13–144–JFA–KFM, 2014 WL 4417702 (D.S.C. September 8, 2014) (explaining that an indigent plaintiff is "not entitled to free photocopies from this court of documents filed in his prior cases or pending cases, including the above-captioned case"), *aff'd by* 595 F.App'x 246 (4th Cir. Mar. 04, 2015); *Qillian v. Evatt*, 308 S.C. 555, 419 S.E.2d 783 (1992) (the costs of the court reporter's transcript and of copying the

record and brief remain the responsibility of the appellant). Plaintiff acknowledges that counsel for the City of Charleston repeatedly pointed this out in multiple briefs filed in state court.

Second, Plaintiff mistakenly insists that permission to proceed IFP at the trial court level means that he must be given IFP status and a waiver of all appellate fees and costs of litigation at the appellate level. State case law holds that "motions to proceed in forma pauperis may only be granted where specifically authorized by statute or required by constitutional provisions." *Martin v. State*, 321 S.C. 533, 535 (1995). In a procedurally-similar case (*i.e*. denial of IFP on appeal, followed by dismissal of case for failure to pay filing fees), the Court emphasized that no statutory or constitutional provision provided for IFP status in state appeals that did not involve fundamental rights. *See Martin v. Pepper,* 2007 WL 1840628 (D.S.C. June 22, 2007), *aff'd by* 239 F.App'x 786 (4th Cir. Sep. 11, 2007), *cert. denied*, 552 U.S. 1282 (2008) (holding that a federal court lacks jurisdiction to hear an appeal of a state court decision). Plaintiff's reliance on *Lakes v. State*, 333 S.C. 382 (Ct. App. 1998) is misplaced. *Lakes* involved a prisoner's application for habeas and/or post-conviction relief ("PCR"), which is a particular type of case that "may be instituted without the payment of a filing fee, regardless of a person's financial status." *Id*., citing *Thompson v. State*, 325 S.C. 58, 59, 479 S.E.2d 808, 808 (1997). Notably, the *Lakes* case also explained that the IFP status concerned only the "filing fees, not court reporter's costs or copying costs." *Id*.

Third, with respect to the imposition of appellate filing fees, the Supreme Court of the United States has upheld a non-waivable filing fee requirement in state court where the case does not involve "fundamental rights." *Ortwein v. Schwab*, 410 U.S. 656, 658–61 (1973) (per curiam) (holding that the filing of a non-domestic civil action in state court is not a "fundamental" right). South Carolina law provides for waiver of filing fees in cases involving fundamental rights, such as domestic relations (divorce/child support/custody), individual privacy (*e.g.* forced

transfusions), and criminal proceedings and appeals, including post-conviction filings. *See Ex Parte Martin*, 321 S.C. 533, 471 S.E.2d 134, 134–35 (1995); *Masada v. Richstad*, Case No. 7:01–3836–17-BG, 2001 WL 34085201, *3 (D.S.C. November 20, 2001), *aff'd by*, 2002 WL 727292 (4th Cir. 2002), *cert. denied*, 537 U.S. 1055 (2002); *Tyson*, 2010 WL 3257861 at fn.4; *Quillian*, 308 S.C. at 555. This limited availability of IFP status is in compliance with applicable federal authority. *See Ortwein*, 410 U.S. at 658; *United States v. Kras*, 409 U.S. 434 (1973); *Boddie v. Connecticut*, 401 U.S. 371 (1971).

While the Supreme Court of the United States has struck down filing fee requirements in cases involving fundamental rights, *see Boddie*, 401 U.S. at 379–83, the *pro se* Plaintiff cannot seriously argue that his right to proceed IFP on the appeal of a denial of a permit application for a walk/run event is a "fundamental right." *See Sullivan v. S.C.D.C.*, 355 S.C. 446, 586 S.E.2d 124 (S.C. 2003) (finding that the issues did not involve "fundamental rights," and therefore, S.C.Code § 8–21–310(11)(a) "provides that a clerk of court must collect a filing fee of $100.00") (citing *Martin v. S.C.D.C.*, 565 S .E.2d 756, 757 (S.C. 2001)). In fact, although Plaintiff assumes that he has a constitutional right to appeal his civil case in state court, the Supreme Court "has long recognized that ... due process does not require a State to provide an appellate system." *Ortwein*, 410 U.S. at 660.

This Court has previously held that the requirement of a filing fee in non-habeas civil cases and court reporters' fees by courts of the State of South Carolina does **not** violate a plaintiff's federal constitutional rights. *See, e.g., Baccus v. Florian*, Case No. 9:12–2440–DCN–BM, 2012 WL 4985243, *4 (D.S.C. September 21, 2012) ("to the extent Plaintiff is challenging the charging of such fees, his claim is subject to dismissal"). Therefore, to the extent Plaintiff is directly challenging the constitutionality of South Carolina's relevant court filing fee requirements, he fails to demonstrate that the requirements are unconstitutional. Even if Plaintiff

could overcome the lack of jurisdiction under Rooker–Feldman, the Plaintiff's Complaint also fails to state a claim for which relief may be granted and would be subject to summary dismissal pursuant to 28 U.S.C.A. § 1915(e)(2)(B).

### C.  Pro Se Litigants May Not Represent Other Persons

Plaintiff's Complaint would also be subject to summary dismissal because he may not bring claims on behalf of other persons. To the extent he seeks to litigate the denial of the permit application on behalf of a "group of volunteers," a *pro se* plaintiff may litigate only his own personal claims. Title 28 U.S.C. § 1654 provides that: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." While the statute allows individuals to "plead and conduct their own cases personally," the statute does not extend the right of self-representation to directing litigation on behalf of others. *See Myers v. Loudon Co. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005) ("The right to litigate for oneself, however, does not create a coordinate right to litigate for others"). Rule 11(a) of the Federal Rules of Civil Procedure requires that "[e]very pleading...must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." Fed.R.Civ.Proc.11. Although the pro se Plaintiff sought a special event permit for "his group of volunteers," he may not litigate on behalf of other persons.

Plaintiff also suggests that he seeks to force a statewide change in the procedural rules for "all" *pro se* litigants. For example, Plaintiff generally complains that other states "make their appeals processes far less cumbersome" or "provide readied forms and pamphlets of pertinent laws, rules, or regulations to indigents" and that "South Carolina does not afford such aid." (DE# 1 at 22, ¶ 50). Plaintiff argues that "[t]here need (sic) to be more protection from the government (including the court systems) to make these remedies available to **all** who cannot afford to

pay…" (*Id.* at 20, ¶ 45 "Attachment Sixteen") (emphasis in original). The *pro se* Plaintiff may not bring a "class action" to force the State of South Carolina to provide entirely cost-free litigation for all indigents. *See Hummer v. Dalton*, 657 F.2d 621, 623-626 (4th Cir. 1981) (a *pro se* plaintiff's lawsuit is "confined to redress for violation of his own personal rights"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (a *pro se* plaintiff may not represent others in a class action); *Neal v. ORS*, Case No. 6:12–1995–TMC–KFM, 2012 WL 3765175, *2 (D.S.C. July 26, 2012) (explaining that a *pro se* plaintiff "lacks standing to litigate other persons' legal rights" and that "this court is not permitted to certify a class action where a *pro se* litigant will act as the representative of that class"), *adopted by* 2012 WL 3639721 (D.S.C., Aug. 23, 2012), *aff'd by* 509 F.App'x 280 (4th Cir.), *cert. denied*, 134 S.Ct. 102 (2013).

### D. Sovereign Immunity and Absolute Judicial Immunity

Plaintiff may be seeking money damages in addition to injunctive relief. He does not make a specific demand for monetary damages, but does assert that the State of South Carolina should "pay" for various litigation costs that he thinks should be free to him and other indigent litigants. The State of South Carolina and its courts have sovereign immunity under the Eleventh Amendment to the United States Constitution, and thus, would be immune from suit for any claims for monetary damages. The United States Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Alden v. Maine*, 527 U.S. 706, 712–13 (1999). Such immunity extends to a state's agencies and instrumentalities. *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Absent any exception, the Defendants are protected by Eleventh Amendment immunity from suit for claims for monetary damages. *See, Curry v. South Carolina*, 518 F.Supp.2d 661, 669 (D.S.C. 2007) (J. Duffy) (holding that although Plaintiff attempted to sue the state court, such entity was not subject to

liability under 42 U.S.C. § 1983 based on Eleventh Amendment immunity). While the Eleventh Amendment does allow "suits for prospective injunctive relief against state officials acting in violation of federal law," *Frew v. Hawkins*, 540 U.S. 431, 437 (2004), the Eleventh Amendment would bar any claims for money damages against South Carolina and its agencies.

Additionally, the state courts (and any presiding state judges) would have absolute judicial immunity from suit for judicial actions taken in Plaintiff's state case. *See Mireles v. Waco*, 502 U.S. 9, 11 (1978); *Stumpf v. Sparkman*, 435 U.S. 349, 351-64 (1978). Plaintiff contends that the rulings of the South Carolina Court of Appeals and the Supreme Court of South Carolina were not "correct" under state appellate rules, and then alleges in conclusory fashion that such state court rulings implicated his (and others') constitutional right to seek redress from the government. He attempts to challenge the results of his state litigation, which was dismissed on procedural grounds. (DE# 1 at 3, ¶ III "Statement of Claim").  It is well-established that the judicial Defendants would not be liable for monetary damages for any judicial rulings. *See, e.g., Brown v. Tunstall*, No. 9:07–603–JFA, 2007 WL 1306746, *2 (D.S.C. May 3, 2007) ("The Supreme Court of South Carolina, the Court of Appeals of South Carolina, [and other state courts] … have absolute immunity from a claim for damages arising out of their judicial actions.").

Finally, to the extent Plaintiff complains about any ministerial acts by state court personnel (*i.e.* sending a letter carrying out the court's order), judicial immunity extends "to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved." *See, e.g., Baccus*, 2012 WL 4985243 at *4 (collecting cases, and recognizing applicability of judicial and/or quasi-judicial immunity for court personnel, such as clerks of court, who carry out tasks for the courts).

IV. Conclusion

      Accordingly, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Complaint should be **dismissed without prejudice** and without issuance and service of process.

                                                                         _____
                                                            MARY GORDON BAKER
                                                            UNITED STATES MAGISTRATE JUDGE

December 7, 2015
Charleston, South Carolina

The plaintiff's attention is directed to the ***Important Notice*** on following page:

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).